# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA L. ABRAMS, *Individually and as Trustee of the Gertrude E. May Irrevocable Residential/Income Only Trust, et. al.,* | No. 4:16-CV-1343 |
| | (Judge Brann) |
| Plaintiffs. | |
| v. | |
| CHESAPEAKE ENERGY CORPORATION, *et. al.,* | |
| Defendants. | |
| PAUL H. ARNOLD, | No. 4:16-CV-1345 |
| Plaintiffs. | (Judge Brann) |
| v. | |
| CHESAPEAKE ENERGY CORPORATION, *et. al.,* | |
| Defendants. | |
| ROBERT C. ABRAMS, JR., | No. 4:16-CV-1346 |
| Plaintiffs. | (Judge Brann) |
| v. | |
| CHESAPEAKE ENERGY CORPORATION, *et. al.,* | |
| Defendants. | |

KYLIE E. AHERN, *a/k/a Kylie E. Perry,*

              Plaintiffs.

      v.

CHESAPEAKE ENERGY CORPORATION, *et. al.,*

            Defendants.

No. 4:16-CV-1347

(Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 21, 2017

In the novel <u>The Fellowship of the Ring</u>, J.R.R. Tolkien, writes "Short cuts make long delays." The hundreds of Plaintiffs here have attempted a short cut by moving for this Court to direct that the parties be permitted to proceed as a class before the American Arbitration Association, ("AAA") effectively avoiding the considerable filing fees associated with that organization. This is not the state of the law in this Circuit, however, and this attempted short cut has long delayed the prosecution of this action in arbitration proceedings and has clogged the Court's docket with four actions brought by 674 plaintiffs, detailing thirty-eight counts against ten defendants resulting in eighteen pending motions. After reviewing all of the foregoing, I reach the ineluctable conclusion that much of this litigation

should have been brought in arbitration proceedings initially; very little belongs in this Court.

## I.     BACKGROUND

Civil action number 4:16-CV-1343 is a two-hundred thirty (230) page, five-hundred eighty-two (582) paragraph amended complaint asserting ten (10) causes of action against eleven (11) oil and gas company defendants brought by three-hundred fifty-four (354) plaintiffs.

Civil action number 4:16-CV-1345 is a one-hundred eighty-three (183) page, four-hundred seventy-three (473) paragraph amended complaint asserting ten (10) causes of action against eleven (11) oil and gas company defendants brought by two-hundred twelve (212) plaintiffs.

Civil action number 4:16-CV-1346 is a one-hundred fifty-one (151) page, three-hundred seventy-seven (377) paragraph amended complaint asserting nine (9) causes of action against eleven (11) oil and gas company defendants brought by seventy-six (76) plaintiffs.

Civil action number 4:16-CV-1347 is a one-hundred thirty-one (131) page, three-hundred forty (340) paragraph amended complaint asserting nine (9) causes of action against eleven (11) oil and gas company defendants brought by thirty-two (32) plaintiffs.

The four actions captioned above are not consolidated actions.   However, for the sake of judicial efficiency, based on the large number of Plaintiffs, with the same counsel, bringing the same claims, against the same Defendants, I am addressing all four in one Memorandum Opinion.  Any factual differences between these cases have been footnoted.

## II.    STANDARD OF REVIEW

It is well established that "the standard for motions to compel arbitration depends on the circumstances."[1] "When it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"[2] "However, limited discovery and review of a renewed motion under a summary judgment standard is appropriate where the validity of the arbitration agreement is at issue."[3]

A court may compel arbitration only where there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate and, in making this

---

[1]   *Aluminium Bahrain B.S.C. v. Dahdaleh,* 17 F. Supp. 3d 461, 467 (W.D. Pa. 2014)   *see also Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 774–76 (3d Cir.2013).

[2]   *Dahdleh citing Guidotti*, at  776.

[3]   *Dahdleh citing Guidotti*, at  774.

decision, a court must give "the party opposing arbitration 'the benefit of all reasonable doubts and inferences that may arise.'"[4]

## III.  ARBITRABILITY DISCUSSION

The Federal Arbitration Act ("FAA") "requires courts to enforce the bargain of the parties to arbitrate"[5] and "requires courts to place arbitration agreements 'on equal footing with all other contracts.'"[6] "Consistent with [the] text [of the FAA], courts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes'..."[7]

### A.  It is undisputed that the lease clauses at issue here require arbitration; however, I will not direct the AAA to proceed with class arbitration.

"Courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"[8] "These include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of

---

[4]  *Dahdaleh*, at  467 *citing  Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 158 (3d Cir.2009) *citing Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980).

[5]  *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012).

[6]  *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017); *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 465, (2015) (*quoting Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *see* 9 U.S.C. § 2.

[7]  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 133 (2013).

[8]  *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014).

controversy.'"[9] "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[10]

"The interpretation of a contract is ordinarily a matter of state law to which we defer."[11] "After *Arthur Anderson*[12], courts deciding motions to compel arbitration may still look to federal decisions applying the substantive law of the applicable state court."[13] The Supreme Court of Pennsylvania has explained,

> The principles that guide this inquiry are well-settled. The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347, 351 (1973). In cases of a written contract, the intent of the parties is the writing itself. *Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 394 Pa. 124, 145 A.2d 672 (1958). Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. *See Shovel Transfer & Storage, Inc. v. PLCB*, 559 Pa. 56, 739 A.2d 133, 139 (1999). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. *Hutchison v. Sunbeam Coal Co*rp., 513 Pa. 192, 519 A.2d 385, 390 (1986).[14]

---

[9]   *Id.* at 1206–07; *quoting Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84 (2002); *accord, Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299–300 (2010) (disputes over "formation of the parties' arbitration agreement" and "its enforceability or applicability to the dispute" at issue are "matters ... the court must resolve" (internal quotation marks omitted)).

[10]   *Steelworkers v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582, (1960).

[11]   *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. at 468.

[12]   *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) (Scalia, J).

[13]   *White v. Sunoco Inc*., 189 F. Supp. 3d 486, 491-92 (E.D. Pa. 2016)

[14]   *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co*., 588 Pa. 470, 480–81 (2006).

There are multiple lease clauses, all of which Plaintiffs have designated

titles. The first was titled both "Mandatory Arbitration Provision' and 'Mandatory

Arbitration Provision 1' and reads as follows:

> ARBITRATION. In the event of a disagreement between Lessor and
> Lessee concerning this Lease, performance thereunder, or damages
> caused by Lessee's operations, the resolution of all such disputes shall
> be determined by arbitration in accordance with the rules of the
> American Arbitration Association. All fees and costs associated with
> the arbitration shall be borne equally by Lessor and Lessee.[15]

"Some of"[16] the leases that contain 'Mandatory Arbitration Provision 1' also

contain 'Supplemental Provision 1:'

> Arbitration: Any questions concerning this lease or performance there
> under [sic] shall be ascertained and determined by three disinterested
> arbitrators, one thereof to be appointed by Lessor, one by the Lessee,
> and the third by the two so appointed as aforesaid and the award of
> such collective group shall be final and conclusive. Arbitration
> proceedings hereunder shall be conducted at the county seat or [sic]
> the county where the lease or action occurred which is cause for
> arbitration, or such other place as the parties to such arbitration shall
> all mutually agree upon. The Cost of such arbitrators will be borne
> equally by the parties.[17]

Alternatively, 'certain other of the leases' that contain 'Mandatory

Arbitration Provision 1' contain a different supplement, known as 'Supplemental

Provision 2:'

---

[15]  4:16-CV-1343, Amended Complaint, ECF No. 45 at ¶ 547; 4:16-CV-1345, Amended
Complaint, ECF No. 45 at ¶ 443; 4:16-CV-1347, Def. Br., ECF No. 55 at 11.

[16]  4:16-CV-1343, Amended Complaint, ECF No. 45 at ¶ 549.

[17]  *Id.*; 4:16-CV-1347, Def. Br., ECF No. 55 at 12

If arbitration of any breach or perceived breach of this Oil and Gas Lease occurs requiring arbitration, said arbitration shall be conducted in a mutually agreeable location that does not constitute a financial hardship on Lessors. If practicable and agreeable to both Parties, said location for arbitration shall be at the county seat where the lease or the action occurred constituting the necessity for arbitration.[18]

The remainder of the leases contain 'Mandatory Arbitration Provision 2,' which states:

(a) Any controversy or claim arising out of or relating to this Lease, or the breach thereof, shall be resolved by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules including the Optional Rules for Emergency Measures of Protection, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(b) Arbitration shall take place within One hundred (100) miles of the leased premises and this agreement shall be governed by and interpreted in accordance with the laws of the State of Pennsylvania. The parties acknowledge that this agreement evidences a transaction involving interstate commerce. The United States Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause in this agreement.

(c) Either party may apply to the arbitrator seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Either party also may, without waiving any remedy under this agreement seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the

---

[18] 4:16-CV-1343, Amended Complaint, ECF No. 45 at ¶ 551.

establishment of the arbitral tribunal (or Pending the arbitral tribunal's determination of the merits of the controversy).[19]

A third lease clause, Plaintiffs' titled 'Mandatory Arbitration Provision,' which I will retitle 'Mandatory Arbitration Provision 3,' states:

Arbitration. Any question concerning this lease or performance there under shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and third by the two so appointed as aforesaid and the award of such collective group shall be final and conclusive. Arbitration proceedings hereunder shall be conducted at the county seat or [sic] the county where the Lease is filed or such other place as the parties to such arbitration shall all mutually agree upon. Each party will pay its own arbitrator and shares costs of the third arbitrator equally.[20]

Sensibly, in Pennsylvania "unambiguous contracts are interpreted by the court as a matter of law."[21]   All the lease clauses here are unambiguous.  They provide for arbitration of the claims asserted here; they do not require class arbitration.

The law in this circuit is clear on both the "who decides" and "clause construction" questions.  Both are matters for the Court, despite Plaintiffs protestations to the contrary.  Curiously, Plaintiffs cite to *Green Tree Fin. Corp. v.*

---

[19]   4:16-CV-1343, Amended Complaint, ECF No. 45 at ¶ 552.

[20]   4:16-CV-1346, Amended Complaint, ECF No. 45 at ¶ 357.

[21]   *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470 (2006).

*Bazzle*,[22] a plurality decision that has been all but overruled.  As this Court stated previously,

> The rocky path the issue of class arbitrability has traversed over the years began eleven years ago with the United States Supreme Court's plurality decision in *Bazzle*…A plural majority decision certainly makes the task of the lower courts more difficult.  In the area of class arbitrability, the waters were muddied even further as the Supreme Court issued subsequent decisions that eroded the already tenuous pronouncement in *Bazzle*. .. The Third Circuit held that the "availability of class arbitration is a "question of arbitrability" that is a gateway question for "a court to decide unless the parties unmistakably provide otherwise."…[When a] contract is silent or ambiguous as to class arbitrations..a court…not an arbitrator…turn[s] to the clause construction question.[23]

"The question of class arbitration belongs with the courts as a substantive question of arbitrability."[24] "The risks incurred by defendants in class arbitration (bet-the-company stakes without effective judicial review, loss of confidentiality) and the difficulties presented by class arbitration (due process rights of absent class members, loss of speed and efficiency, increase in costs) all demand a more particular delegation of the issue than we may otherwise deem sufficient in bilateral disputes."[25]

---

[22]  539 U.S. 444 (2003)

[23]  *Chesapeake Appalachia, LLC  v. Scout Petroleum, LLC,* 73 F. Supp. 3d 488 (2014) *aff'd* 809 F.3d 746 (2016).

[24]  *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) NEED FULL CITES See Carlson, 817 F.3d at 877; *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 334 (3d Cir. 2014); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013).

[25]  *Catamaran Corp.*, 864 F.3d at 973.

"When dealing with class arbitration, we seek clear and unmistakable evidence of an agreement to arbitrate the particular question of class arbitration."[26] "Incorporation of AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration."[27]

Here, Plaintiffs move for this Court to Order class arbitration. That action, however, would be in contravention of the clear law in this Circuit. Earlier this year, in a case I will reference as *Opalinski II*,[28] the United States Court of Appeals for the Third Circuit held, as have several other Circuit Courts of Appeals, that "silence regarding class arbitration generally indicates a prohibition."[29]

---

[26] *Id. see also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (2016) (Cowen, J.).

[27] *Catamaran Corp.*, 864 F.3d at 973.

[28] *Opalinski I* held that District Courts, and not the arbitrator, decide the 'who decides' question. *Opalinski v. Rober Half Int'l Inc.*. 761 F.3d 326 (3d Cir. 2014) (Ambro, J.).

[29] *Opalinski v. Robert Half Int'l Inc*, 677 F. App'x 738, 741 (3d Cir. 2017) (Restrepo, J.) (unpublished), *cert. denied sub nom. Opalinski v. Robert Half Int'l, Inc.*, No. 16-1456, 2017 WL 2444686 (U.S. Oct. 30, 2017); *See, e.g., Eshagh v. Terminix Int'l Co*., 588 Fed.Appx. 703, 704 (9th Cir. 2014) (affirming the district court's grant of a motion to strike class allegations, where the arbitration agreement did not mention class arbitration); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *Reed v. Fla. Metro. Univ., Inc*., 681 F.3d 630, 643–44 (5th Cir. 2012) (finding that silence in an agreement does not "constitute[ ] consent to class arbitration" (internal quotation marks omitted)), abrogated on other grounds by *Oxford Health Plans LLC v. Sutter*, —— U.S. ——, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728–29 (8th Cir. 2001) (holding that the district court did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co*., 55 F.3d 269, 275 (7th Cir. 1995) (stating "the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter").

The District Courts in this Circuit have followed suit. Consistent with the foregoing, combined with the reasoning set forth in my prior holding in *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,[30] and that of the Honorable John E. Jones III, of this Court, in *Chesapeake Appalachia, L.L.C. v. Ostroski*,[31] I hold that the leases in the instant cases are silent as to class arbitration. Therefore, although arbitration is required in this action by contract, the arbitration permitted here is bilateral, not class arbitration.

I note that Plaintiffs have failed to cite to either *Opalinski II,* or either of this Court's *Chesapeake Appalachia* opinions noted above. Perhaps that is because the three opinions hold the opposite of the relief sought.

That said, nothing in today's holding precludes the parties from consenting to a combined proceeding before the AAA, or from the AAA permitting a combined proceeding. Plaintiff asserts that the AAA has a "one contract, one case" guideline.[32] One reason Plaintiffs want this Court to enter a declaratory judgment stating that Plaintiffs can bring their claims as a class arbitration is because the AAA has high filing fees. After that filing fee has been paid for each contract, however, (here 674 separate filing fees), then the AAA will permit the Plaintiff to

---

[30] No. 4:14-CV-0620, 2017 WL 1541659, at *2 (M.D. Pa. Apr. 28, 2017).

[31] 199 F. Supp. 3d 912 (M.D. Pa. 2016).

[32] 4:16-CV-1343 ECF No. 45 at ¶ 566; 4:16-CV-1345 ECF No. 45 at ¶ 466.

"then raise the issue of consolidation or joinder with the arbitrator(s) once he or she is appointed."

I recognize that it is seemingly unfair for Plaintiffs that each may be required to pay such an arbitration filing fee, yet still end up in a class proceeding by consent of the Defendants and the appointed arbitrator. Despite the costs and perceived unfairness, the Court cannot circumvent the terms of the contract, nor my role in interpreting the contract, to order and direct a class arbitration proceeding.

**B. The Plaintiffs standing to bring Sherman Act, RICO, conversion, civil conspiracy, and unjust enrichment claims arises only based on their status as leaseholders receiving royalties. Accordingly, those claims are subject to arbitration pursuant to the lease clause at issue itself, as they "concern[] this lease"[33] and "aris[e] out of or relat[e] to this Lease"[34]**

The purpose of the Sherman Act is to protect buyers and sellers from the effects of seller or buyer 'market power' unless obtained by competition on the merits."[35] Plaintiffs here bring claims under both Sections 1 and 2 of the Sherman Act, which prohibit agreements that unreasonably restrain competition, and prohibit monopolization, attempted monopolization, and conspiracies to

---

[33]   Mandatory Arbitration Provision 1 and Mandatory Arbitration Provision 3.

[34]   Mandatory Arbitration Provision 2.

[35]   Miles, John J., 20140513 AHLA Seminar Papers 1.

monopolize, respectively.  Plaintiffs allege that Defendants violated RICO both by engaging in a pattern of racketeering activity and for having conspired to do so.

The Sherman Act injuries alleged by Plaintiffs here are premised on the amounts of signing bonuses and royalties paid.  The RICO claims are also premised on the amount of royalties paid.  Accordingly, the amount of royalties paid "concern[] this lease" and "aris[e] out of or relat[e] to this Lease."  The language used in Plaintiffs amended complaints makes it clear that their claims under RICO and the Sherman Act are predicated on their status as lease holders, namely "as lessors…and holders of royalty interests…Plaintiffs were….endangered by …the conspiracy between Defendants in restraint of trade;" and "Plaintiffs have suffered antitrust injury…the loss of royalties due."

More than thirty years ago, the United States Supreme Court held in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., that the Sherman Act did not preclude arbitration of claims pursuant to it.[36]  In sum, "the Act itself provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability."[37]  The Supreme Court went on to explain, "that is not to say that all controversies implicating statutory rights are suitable for arbitration."[38]  It continued that the first step is always to

---

[36]   473 U.S. 614 (1985) (Blackmun, J.).

[37]   *Id.* at 627.

[38]   *Id.*

interpret the parties agreement in the contract. "There is no reason to distort the process of contract interpretation, however, in order to ferret out the inappropriate."[39] "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."[40] "Nothing [] prevents a party from excluding statutory claims from the scope of an agreement to arbitrate."[41]

Using the same reasoning applied in *Mitsubishi Motors*, the United States Supreme Court held that RICO claims may also be pursued in arbitration.[42] The Supreme Court wrote, "We similarly find that the criminal provisions of RICO do not preclude arbitration of bona fide civil actions brought under § 1964(c)."[43] "So long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."[44] "We find no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate claims."[45]

---

[39] *Id.*

[40] *Id.* at 628.

[41] *Id.*

[42] *Shearson/American Exp., Inc. v. McMahon* 482 U.S. 220 (1987) (O'Connor, J.).

[43] *Id.* at 240.

[44] *Id.* citing *Mitsubishi Motors.*

[45] *Id.* at 242.

The United States District Court for the Western District of Pennsylvania has held similarly, "unless a RICO case involves "allegations of criminal activity normally associated with professional criminals" involved in organized crime, RICO claims may be submitted to arbitration."[46] The United States District Court for the Eastern District of Pennsylvania has held that both RICO and Sherman Act claims are arbitrabable, as well stating: "RICO claims predicated on mail and wire fraud . . . are arbitrable…[and,] as a matter of law, plaintiffs' antitrust claims are arbitrable."[47]

Similarly, the Plaintiff's conversion, civil conspiracy, and unjust enrichment also "concern this lease" and "aris[e] out of or relat[e] to this Lease." As to conversion, Plaintiffs allege that Defendants "caused unauthorized or artificially inflated and unreasonable deductions to be taken from royalties otherwise payable to Plaintiffs [who] were entitled to receive the wrongfully deducted amounts pursuant to their leases." As to the civil conspiracy count, Plaintiffs allege that Defendants "conspired with each other … to make wrongful deduction from Plaintiffs' royalties and to thereby deprive Plaintiffs of the royalties which they were and are entitled to receive under the respective Leases." As to the unjust

---

[46] *Dahdaleh*, 17 F. Supp. 3d at 471; *citing Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 242, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (*quoting* Justice Marshall's dissent in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3292, 3295, 87 L.Ed.2d 346 (1985) to explain that RICO cases rarely involve allegations of organized crime).

[47] N.*Y.C. Disc. Shoe Co. v. Coray Mgmt., Inc.*, No. CIV. A. 87-0790, 1987 WL 10665, at *3-4, 1987 U.S.Dist. LEXIS 3713 (E.D. Pa. May 8, 1987).

enrichment count, Plaintiffs allege that Defendants "artificially inflated post-production costs from Plaintiffs' royalties," but those royalties are only due to the Plaintiffs because of their Leases.

"Where, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the 'law's permissive policies in respect to arbitration; counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'"[48]

"In sum, when phrases such as "arising under" and "arising out of" appear in arbitration provisions, they are normally given broad construction, and are generally construed to encompass claims going to the formation of the underlying agreements."[49] "This construction of an arbitration provision is consistent with both federal and Pennsylvania precedent holding that an agreement to arbitrate a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[50]

### C. Because the Sherman Act, RICO, conversion, civil conspiracy, and unjust enrichment claims must be brought against the signatories in

---

[48] *Granite Rock Co. v. International Broth. Of Teamsters*, 561 U.S. 287, 299 (2010), *quoting*, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

[49] *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) (Ambro, J).

[50] *Id.* (internal citation omitted).

**arbitration, it necessarily follows that those claims against the consenting nonsignatorys must also be brought in arbitration.**[51]

"Arbitration is a matter of contract and the FAA's strong 'proarbitration' policy only applies to disputes that the parties have agreed to arbitrate."[52] "An exception to that rule is that a nonparty may force arbitration if the relevant state contract law allows him to enforce the agreement to arbitrate."[53] **"To decide 'whether a non-party can enforce an arbitration clause against a party' we must look to 'applicable state law,' which in this case is"**[54] Pennsylvania. **"'Traditional principles of state law' may allow 'a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"**[55]

"Pennsylvania law allow non-signatories to be bound to an arbitration agreement."[56]   Although, typically, "estoppel can bind a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract

---

[51]   Although I am sympathetic to Plaintiffs assertions that other courts have disallowed this broad reading of arbitrability, all of the cases cited to by Plaintiffs are outside the Third Circuit and not binding on the undersigned.  The clear law in this Circuit is as cited herein.

[52]   *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011).

[53]   *Id. (internal citation omitted). See also Arthur Andersen LLP v. Carlisle,*  556 U.S. 624 (2009).

[54]   *Drayton v. Toyota Motor Credit Corp.*, 686 F. App'x 757, 758 (11th Cir. 2017) *citing Lawson* at 1170–71.

[55]   *Lawson,* at 1171 *citing* Carlisle*, at* 632.

[56]   *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (Hardiman, J).

containing an arbitration clause."[57]  "Courts have [also] bound a signatory to arbitrate with a non-signatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non -signatory's obligations and duties in the contract ... and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations."[58]

Here, the non-signatories have voluntarily consented to submit to the arbitration of Plaintiffs' claims.  Because Plaintiffs' Sherman Act and RICO claims (as well as others) are inextricably intertwined with their breach of contract claims, claims against the signatories are therefore required to be arbitrated. Plaintiffs' claims against signatories need to proceed contemporaneously and contiguous to the claims against non-signatories that the signatories are alleged to have colluded, excluded, and/or engaged with, in a pattern of racketeering activity.

"To compel arbitration under the equitable estoppel doctrine: the claims must be based directly on the agreement."[59]  Here, I hold that the claims of Plaintiffs are based directly on the agreement, because for the arbitrator to order the signatories to pay increased royalty payments to Plaintiffs under their lease

---

[57]  *Id.* at 277.

[58]  *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.A.,* 269 F.3d 187 (3d Cir. 2001) (Barry, J.).

[59]  *Griswold*, at 274.

based on antitrust and racketeering violations, evidence from the non-signatories that the signatories allegedly colluded with, and monopolized the market with, is necessary.

Moreover, if I were to order otherwise, Plaintiffs face conflicting results — a positive or negative arbitrator award against some of the defendants with the opposite awarded as to the remainder. "Hence, to uphold judicial efficiency, save the parties from duplicative litigation, and maintain the consistency of the verdicts, we direct the [parties] try the indistinguishable claims jointly in a proceeding consistent with the arbitration agreement."[60]

### D. The Plaintiffs who do not have leases with arbitration clauses may proceed with all claims in this Court.

Despite the foregoing discussion, there exist a small subset of Plaintiffs that do not have arbitration clauses in their leases.[61] As Judge Julio M. Fuentes of the Third Circuit recently wrote,

> However, the Supreme Court has repeatedly warned against "overreading its precedent" concerning the presumption of arbitrability. *E.g. Granite Rock*, 130 S.Ct. at 2857. The presumption in favor of arbitration does not "take courts outside the settled framework" of using principles of contract interpretation to determine the scope of an arbitration clause. *Id.* at 2859. Quite the contrary, the presumption "derives its legitimacy from" the judicial supposition "that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and

---

[60] *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1272 (Pa. Super. Ct. 2004).

[61] 4:16-CV-1343 ECF No. 87; 4:16-CV-1345 ECF No. 85; 4:16-CV-1346 ECF No. 79; 4:16-CV-1347 ECF No. 79.

(absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." Id. at 2859–60; *see also Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir.1993). Indeed, while the FAA "embodies a strong federal policy in favor of arbitration, ... the duty to arbitrate remains one assumed by contract." *Sweet Dreams Unlimited*, 1 F.3d at 641. Thus, the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. *See Granite Rock*, 130 S.Ct. at 2858–59. Otherwise, the plain language of the contract controls.[62]

In the matters at hand there are 108[63] leases that do not contain ANY arbitration clauses. As such, these Plaintiffs may proceed in this Court against these Defendants.

### E. The actions and claims that are arbitrable will be not be stayed pending arbitration

The plain language of the FAA permits this Court to stay, rather than dismiss the action.[64] However, because no issues remain in the arbitrable claims, all causes of action brought by landowners with lease clauses that require

---

[62] *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172–73 (3d Cir. 2014) (Fuentes, J.).

[63] Plaintiffs from only two of the above four cases have leases with no arbitration requirement - cases numbered 4:16-CV-1346, see ECF No. 79 listing 80 Plaintiffs with no arbitration clause; and 4:16-CV-1347, see ECF No. 79 listing 28 Plaintiffs with no arbitration clause.

[64] *See Lloyd v. HOVENSA, LLC.*, 369 F.3d 263 (3d Cir. 2004) *and see* 9 U.S.C.A. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.").

arbitration will be dismissed in favor of arbitration.  This approach has been

approved by the Third Circuit, where that court stated, "after reviewing the text of

§ 3, we opted to 'side with those courts that take the Congressional text at face

value' and reasoned that the statute's "directive that the Court 'shall' enter a stay

simply cannot be read to say that the Court shall enter a stay in all cases except

those in which all claims are arbitrable and the Court finds dismissal to be the

preferable approach."[65]  That level-headed approach informs my thinking here.

## IV.    CONCLUSION

In accordance then with the written leases at issue, the actions will be

dismissed in favor of arbitration as to all Plaintiffs who have an arbitration clause

in the subject leases.  The action will remain in its entirety and will now proceed in

this Court only as to the 108 Plaintiffs in the two remaining cases who have no

arbitration clause in their subject leases.

An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

---

[65]    *Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 143 (3d Cir. 2015) (Krause, J.)